United States District Court
Southern District of Texas

**ENTERED**

May 04, 2018

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Ellen Adams, Kimberlyn Jones, and Crystal LeBlanc, | § § § § | |
| *Plaintiffs* | § § | |
| vs. | § § | NO. 4:17-CV-2653 |
| Nissan North America, Inc., | § § § | |
| *Defendant* | § § § | |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint.[1] ECF No. 15. The parties appeared before the Court on April 20, 2018 to argue their positions on this motion. Having considered the arguments of counsel, the record, and the applicable law, the Court recommends that Defendant's Motion to Dismiss should be granted.

**I.
BACKGROUND**

Three plaintiffs, Ms. Ellen Adams ("Adams"), Ms. Kimberlyn Jones ("Jones"), and Ms. Crystal LeBlanc ("LeBlanc") (collectively "Plaintiffs"), bring this action against Nissan North America, Inc. ("Nissan") on behalf of themselves and all other Texas residents who own, lease, or operate 2008 and 2009 Nissan Altima vehicles ("Class Vehicles"). Pls.' First Am. Compl. at ¶ 1, ECF No. 13. Plaintiffs allege their Class Vehicles have defective dashboards "that do not withstand exposure to sunlight and humidity and ultimately melt and degrade." *Id*. at ¶ 1. These

---

[1] Plaintiffs filed a response in opposition. Pls.' Opp'n, ECF No. 23. Defendants filed a reply. Def.'s Reply, ECF No. 24.

deteriorating dashboards become reflective, casting glare onto the windshield, and making it difficult to see through the windshield, and thus dangerous to drive. *Id*. at ¶¶ 2-3.

Plaintiffs Adams and Jones first filed this action on September 1, 2017. Pls.' Compl., ECF No. 1. Nissan filed a Motion to Dismiss on October 19, 2017. Def.'s Mot. Dismiss, ECF No. 5. Plaintiffs filed their First Amended Complaint on November 9, 2017, adding Plaintiff LeBlanc. ECF No. 13. Plaintiffs assert three causes of action: (1) breach of implied warranty of merchantability under TEX. BUS. & COM. CODE § 2.314; (2) money had and received and unjust enrichment; and (3) declaratory judgment and injunctive relief under 28 U.S.C. § 2201. Defendant again filed a Motion to Dismiss on November 30, 2017, which is now pending before this Court. ECF No. 15. Defendant makes three main arguments: (1) Plaintiffs' claims are time-barred and fraudulent concealment tolling does not apply; (2) Plaintiffs fail to state a claim for which relief can be granted; and (3) Plaintiffs' claim for declaratory and injunctive relief is barred because there is no "actual controversy" and it is derivative of the other causes of action.

## II.
## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Int'l v. Napoli*, 748 F. Supp. 2d 656, 664-65 (S.D. Tex. 2010). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). A

complaint must "contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the pleaded factual contents allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen, Miss.,* 681 F.3d 215, 219 (5th Cir. 2012). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The ultimate question "is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012). "[I]n considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true." *Duke Energy Int'l*, 748 F. Supp. at 665. "[C]ourts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Farshchi v. Wells Fargo Bank, N.A.*, No. H-15-1692, 2016 WL 2858903, at *2 (S.D. Tex. May 13, 2016) (citing *Flynn v. State Farm Fire and Cas. Ins. Co.*, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009)).

### III.
### ANALYSIS

#### A.  Plaintiffs' Claims Are Time Barred.

Defendant contends that Plaintiffs' claims for breach of implied warranty of merchantability, money had and received, and unjust enrichment are time-barred. ECF No. 15 at 7-10. Defendant further alleges neither the discovery rule nor fraudulent concealment toll the

limitations period. *Id*. at 8-13. Plaintiffs respond that Nissan's fraudulent concealment of the defect tolled their limitations period.[2] ECF No. 23 at 7.

### 1.   The statute of limitations for claims of implied warranty of merchantability.

Both parties agree that the limitations period for a claim for breach of implied warranty of merchantability is four years. ECF No. 15 at 7; ECF No. 23 at 7; *see* TEX. BUS. & COM. CODE § 2.725(a); *Morris v. Cessna Aircraft Co.*, 833 F. Supp. 2d 622, 643 (N.D. Tex. 2011). Breach of warranty claims accrue at the time of delivery or sale, "regardless of the aggrieved party's lack of knowledge of the breach." TEX. BUS. & COM. CODE § 2.725(b); *MAN Eng. & Components, Inc. v. Shows*, 434 S.W.3d 132, 140 (Tex. 2014); *see also Safeway Stores, Inc. v. Certaineed Corp.*, 710 S.W.2d 544, 546 (Tex. 1986).

Adams' "2008 Nissan Altima was purchased new by her father from Champion Nissan" in 2008.  ECF No. 13 at ¶ 73. "At the time of purchase, he gave it to her to use as her primary vehicle." *Id*. "Jones purchased her new 2009 Nissan Altima from Conroe Nissan in Conroe, Texas," though she does not specify when she purchased her vehicle. *Id*. at ¶ 81. A new 2009 model would have been purchased in 2008 or 2009. ECF No. 15 at 8. LeBlanc "leased her 2008 Nissan Altima from Honda of Katy in Katy, Texas", but does not specify whether she leased a new vehicle in 2007 or 2008, or a pre-owned vehicle at a later date. ECF No. 13 at ¶ 86. Plaintiff Adams' implied warranty claim would have accrued in 2008, and her four year limitations period expired in 2012. ECF No. 15 at 8. Plaintiff Jones' implied warranty claim would have accrued at the latest in 2009, and her four-year limitations period expired in 2013. *Id*. Plaintiff LeBlanc's implied warranty claim would have accrued no later than 2008, and the limitations period expired by 2012. *Id*.

---

[2] Plaintiffs do not allege the discovery rule applies and specifically disclaim any reliance on it. ECF No. 23 at 7 ("Nissan's arguments regarding the discovery rule are irrelevant.").

Plaintiffs do not dispute when their implied warranty claims accrued; they only argue that fraudulent concealment tolled their claims. ECF No. 13 at ¶¶ 116-131; ECF No. 23 at 7. The parties agree that Plaintiffs' implied warranty claims are time barred unless fraudulent concealment tolling applies. *See* Apr. 20, 2018 Oral Argument at 11:04-11:05, 11:46.

### 2. The statute of limitations for claims for money had and received, and unjust enrichment.

Plaintiffs contend that the limitations period for a claim for money had and received is four years while Defendant claims it is two years.[3] This Court need not decide which period applies to a claim for money had and received because the parties agree that, regardless of whether the limitations period is two or four years, Plaintiffs' equitable claims are time-barred unless tolling applies. *See* Apr. 20, 2018 Oral Argument at 11:12-11:13, 11:46. The limitations period for unjust enrichment is two years.[4] TEX. CIV. PRAC. & REM. CODE § 16.003; *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam). Claims for money had and received and unjust enrichment begin to accrue "when the money is paid."

---

[3] There is no controlling statute, or Texas Supreme Court case on point. The Texas Courts of Appeal are split as to whether a two or four year limitations period applies to claims for money had and received. *Compare Merry Homes, Inc., v. Luc Dao*, 359 S.W.3d 881, 884 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (two years) *with Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 165 (Tex. App.—El Paso 1997, no pet.) (four years). In *Amoco Prod. Co.*, the El Paso Court of Appeals held that "money had and received is an action for debt, governed by the four-year statute of limitations." 946 S.W.2d at 165. In *Merry Homes, Inc.*, the Fourteenth Court of Appeals held that money had and received is more akin to a claim for unjust enrichment, and therefore the two-year limitations period applies. 359 S.W.3d at 883. The most recent Fifth Circuit case applied a four-year limitations period to a claim for money had and received. *Peerless Ins. Co. v. Texas Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1779 (5th Cir. 1986). More recently, following the Fifth Circuit, Judge Harmon applied a four-year limitations period to a claim for money had and received. *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2016 WL 7177881, at *20 (S.D. Tex. Dec. 8, 2016). The court explained that the "law in Texas is not clear on this topic", because at the state level, there were two conflicting cases, *Amoco Production Co.* and *Merry Homes, Inc.*, which rendered Texas law unclear. Thus, the court decided to follow "the Fifth Circuit's most recent holding" in *Peerless*. *Id.* Some other federal courts have applied the two year limitations period. *See Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *6 (N.D. Tex. Sept. 2, 2015); *Johnson v. Aurora Loan Services, LLC*, No. H-15-755, 2015 WL 5009228, at *5 (S.D. Tex. Aug. 21, 2015); *Payne v. Wells Fargo Bank, N.A.*, No. 3:12-CV-5219, 2015 WL 1402321, at *5 (N.D. Tex. Mar. 26, 2015); *Fawaz v. Byers*, No. H-13-0897, 2014 WL 1671746, at *6 (S.D. Tex. Apr. 28, 2014).

[4] Plaintiffs do not dispute that the limitations period for unjust enrichment claims is two years. ECF No. 23 at 7 n.3.

*Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *6 (N.D. Tex. Sept. 2, 2015); *see also Mayo v. Hartford*, 354 F.3d 400, 410-11 (5th Cir. 2004).

### 3. Plaintiffs fail to state sufficient facts to support a reasonable inference that fraudulent concealment tolled their claims.

Plaintiffs must plead sufficient facts supporting a reasonable inference that fraudulent concealment tolled their claims. The elements of fraudulent concealment are: "(1) actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 950 (S.D. Tex. 2013); *see also Garcia v. Chrysler Group, LLC*, 127 F. Supp. 3d 212, 234-35 (S.D.N.Y. 2015) (applying Texas law); *Vernon v. City of Dallas*, No. 3:08-CV-1068-B, 2009 WL 2486033, at *5 (N.D. Tex. Aug. 13, 2009). "Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Ultraflo Corp.*, 926 F. Supp. 2d at 950. Thus, a plaintiff must also plead facts that she failed, despite due diligence, "to discover the facts giving rise to her cause of action." *Vernon*, 2009 WL 2486033, at *5. Numerous courts have required an additional element: that plaintiff reasonably relied on the deception.[5] *Garcia v*, 127 F. Supp. 3d at 234-35; *see also, e.g.*, *Davenport v. Adu-Lartey*, 526 S.W.3d 544, 555 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Tipton v. Brock*, 431 S.W.3d 673, 681 (Tex. App.—El Paso 2014, pet. denied); *Vial v. Gas Sols., Ltd.*, 187 S.W.3d 220, 229 (Tex. App.—Texarkana 2006, no pet.); *Mauskar v. Hardgrove*, No. 14-02-00756-CV, 2003 WL 21403464, at *5 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.).

---

[5] Texas courts are inconsistent in their application of this element. While numerous courts apply this element, the Texas Court of Appeals in one case observed that this element applies "[i]f the fraudulent concealment is based on a fraudulent representation by the defendant." *B. Mahler Interests, L.P. v. DMAC Constr. Inc.*, 503 S.W.3d 43, 55 (Tex. App.—Houston [14th Dist.] 2016, no pet. h.). The Northern District of Texas has commented that "the requirement of reasonable reliance … actually overlaps with application of the rule. The statute of limitations is tolled 'until the fraud is discovered or could have been discovered with reasonable diligence.' … This is equivalent to a requirement of reasonable reliance, because '[o]nce the plaintiff knows or should have known of the deceit, reliance is no longer reasonable.'" *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 516 (N.D. Tex. 2001), *abrogated on other grounds by Newby v. Enron Corp.*, 542 F.3d 453 (5th Cir. 2008) (citations omitted).

#### a. *Plaintiffs do not sufficiently plead actual knowledge of the defect.*

Plaintiffs have not sufficiently plead facts supporting a reasonable inference that Nissan had *actual* knowledge of the alleged defect at the time that the Class Vehicle was manufactured or entered the stream of commerce. ECF No. 13, at ¶¶ 31-62. Plaintiffs have plead only that Nissan *should have known* about the defect at that time. For example, Plaintiffs state "Nissan **should have** adequately tested the [thermoplastic polyurethane] for hydrolysis…." *Id*. at ¶ 32 (emphasis added). "Basic research regarding urethanes **would have** revealed that these materials are susceptible to extensive hydrolysis at elevated temperatures and humidity…." *Id*. at ¶ 34 (emphasis added). "At the time of manufacture of the Class Vehicles, it was technologically feasible … to test component parts at elevated temperature and humidity levels that **would have** exposed the defect in the dashboards in Class Vehicles." *Id*. at ¶ 42 (emphasis added).

Additionally, throughout their complaint, Plaintiffs repeatedly reference a similar case in Florida filed with respect to the same 2008-2009 Nissan Altima dashboard defect, which was filed November 11, 2014.[6] *Id*. at ¶¶ 6-10, 23-24, 27, 51, 71, 93(i), 120-121. Plaintiffs incorporate into their Complaint an excerpt of the *Sanborn* plaintiffs' Joint Motion for Final Approval of Class Settlement and Supporting Memorandum which concedes that the *Sanborn* plaintiffs had no evidence of Nissan's actual knowledge:

> Plaintiffs' fact discovery did not turn up evidence that Nissan knew about the dashboard defect when it first distributed the 2008 and 2009 Nissan Altima. But in Plaintiffs' view, the evidence could be interpreted to show Nissan **should have known** that the dashboard material was not properly formulated or tested, and that Nissan concealed the defect from the public when it did discover the defect. … Nissan **would have known** about the defect if it had properly tested the material prior to release.

---

[6] Complaint, *Sanborn et al. v. Nissan North America, Inc.*, No. 0:14-CV-62567, (S.D. Fla. filed Nov. 11, 2014), ECF No. 1. Courts may take "judicial notice of publicly-available documents … which [are] matters of public record directly relevant to the issue at hand." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Court takes judicial notice that this other case has been filed.

7

*Id*. at ¶ 8 (emphasis added). While this does not necessarily mean that Nissan did not in fact know about the defect at the time, allegations that Nissan should have known of the defect fall short of actual knowledge and are insufficient.

### b. *Nissan had no duty to disclose the defect.*

Plaintiffs assert that they need only plead that Nissan was silent if Nissan had a duty to disclose the defect to Plaintiffs as consumers. ECF No. 23 at 11. Plaintiffs have alleged that Nissan did not disclose or otherwise notify consumers of this defect. ECF No. 13 at ¶¶ 4, 64-67, 69-70. Plaintiffs must also plead sufficient facts to support a reasonable inference that Nissan had a duty to disclose the defect to them. Plaintiffs have failed to sufficiently allege this element.

### i. *Plaintiffs cannot rely on 49 C.F.R. § 577.5 as the basis for a duty of disclosure for fraudulent concealment purposes.*

Plaintiffs allege that "[p]ursuant to 49 C.F.R. [§] 577.5, Nissan was required by law to give notice to Plaintiffs and the other members of the Class of the defect." ECF No. 13 at ¶ 124. As an initial matter, the duty Plaintiffs rely on arises under 49 U.S.C.A. § 30118(c),[7] a provision of the National Traffic and Motor Vehicle Safety Act ("Safety Act"). 49 U.S.C.A. §§ 30101 *et seq*. (originally codified at 15 U.S.C. §§ 1381 *et seq*. (1966)). Section 577.5 is one of the administrative regulations the National Highway Traffic Safety Administration ("NHTSA"), an agency of the U.S. Department of Transportation, promulgated for implementation of the Safety Act. 49 C.F.R. § 501.1 *et seq*. It sets forth the required information that manufacturer statutory notifications must include. 49 C.F.R. § 577.5; *see, e.g.*, *Ctr. for Auto Safety, Inc. v. Nat'l Highway Traffic Safety Admin.*, 342 F. Supp. 2d 1, 4-5 (D.D.C. 2004), (explaining manufacturer

---

[7] "A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary [of Transportation] by certified mail or electronic mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section, if the manufacturer--(1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter." 49 U.S.C.A. § 30118(c).

duty to notify consumers of safety defects arising under 49 U.S.C.A. § 30118, and notification requirements pursuant to 49 C.F.R. § 577.5), *aff'd sub nom. Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798 (D.C. Cir. 2006).

However, the Safety Act does not give rise to a private cause of action. *Ayres v. General Motors Corp.*, 234 F.3d 514, 524 (11th Cir. 2000). Plaintiffs conceded this at the hearing. *See* Apr. 20, 2018 Oral Argument at 11:29-11:30. Further, Plaintiffs have cited no authority to support their argument that section 577.5 creates a duty from the manufacturer to the consumer. Likewise, they have no authority that this provision applies in the context of fraudulent concealment for tolling purposes.  Apr. 20, 2018 Oral Argument at 11:30-11:34, 11:54. Quite to the contrary, Nissan's duty to disclose information to the NHTSA does not extend to Plaintiffs. *See Riley v. Cont'l Gen. Tire, Inc.*, No. 1:00-CV-369, 2002 WL 34357197, at *2 (E.D. Tex. Feb. 28, 2002) (tire manufacturer owed no duty to plaintiffs to provide specific information to the NHTSA regarding alleged safety defect).

Even assuming these regulations give rise to a duty that Nissan disclose a known safety defect to consumers, the duty arises only *after* the manufacturer has already "determine[d] that any motor vehicle or item of replacement equipment produced by the manufacturer contains a defect that relates to motor vehicle safety, or fails to conform to an applicable Federal motor vehicle safety standard, or the manufacturer files a defect or noncompliance information report under 49 CFR part 573…" 49 C.F.R. § 577.5.[8] Plaintiffs failed to allege sufficient facts that this duty has been triggered—that Nissan had already determined that the dashboard defect "relates to motor vehicle safety," "fails to conform to an applicable Federal motor vehicle safety standard," or that Nissan has already "file[d] a defect or noncompliance information report." To

---

[8] *See, e.g., U.S. v. General Motors Corp.*, 656 F. Supp. 1555, (D.D.C. 1987) (holding that duty of notification under the National Traffic and Motor Vehicle Safety Act, as initially codified at 15 U.S.C. § 1381 *et seq.*, is not triggered until the manufacturer has determined the vehicle "contains a defect which relates to motor vehicle safety.").

the contrary, Plaintiffs acknowledge that, at least with regard to Nissan Infiniti vehicles which they allege had the same defect, "Nissan []never disclosed to drivers that their melting dashboards were a safety hazard and **maintained that the issue was merely cosmetic**." ECF No. 13 at 14, n.16, ¶¶ 60-61 (emphasis added). Thus, Plaintiffs have failed to allege facts giving rise to a duty Nissan had to disclose.

### ii. Nissan has no duty of disclosure to Plaintiffs.

Contrary to Plaintiffs' assertion that the Defendant is under a duty to disclose based on section 577.5, numerous cases have discussed the duty element in the context of fraudulent concealment at both the motion to dismiss and summary judgment stages, and found a manufacturer has no duty of disclosure to a consumer. Under Texas law, a duty to disclose in the context of fraudulent concealment arises only in limited circumstances where there is a fiduciary or confidential relationship. *In re General Motors LLC Ignition Switch Litig.,* 257 F. Supp. 3d 372, 453 (S.D.N.Y. 2017) (applying Texas law) (granting motion to dismiss fraudulent concealment claim in vehicle product liability case), *modified on reconsideration by*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *Garcia*, 127 F. Supp. 3d at 235-36 (same); *see also, e.g.*, *Patrick v. Howard*, 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ) (granting summary judgment) ("the cases where fraudulent concealment applies are rare, such as those involving doctor-patient, attorney-client, or fiduciary relationships."); *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 747 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (granting summary judgment) (duty only exists for fraudulent concealment where there is a fiduciary relationship); *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 778 (Tex. App.—Houston [14th Dist.] 1993, no writ) (affirming summary judgment) (without a fiduciary relationship between the parties, there is no duty for fraudulent

concealment purposes).[9] "The issue of whether a duty of disclosure exists is a question of law for the court." *Patrick*, 904 S.W.2d at 945.

No duty arises in an arms-length transaction between a manufacturer and consumer, particularly where Plaintiffs did not purchase or lease their vehicles directly from the manufacturer. *In re General Motors LLC Ignition Switch Litig.,* 257 F. Supp. 3d at 453-54 (granting motion to dismiss) (manufacturer-purchaser relationship does not give rise to duty to speak, particularly where plaintiff acquired vehicle from a third party (such as through a dealer, a family member, or third-party seller)); *see also, e.g.*, *Seibert*, 853 S.W.2d at 778 (granting summary judgment) (car manufacturer has no duty to notify consumer of cause of action); *Woods v. R.J. Reynolds Tobacco Co.*, 635 F. Supp. 2d 530, 537-38 (S.D. Miss. 2009) (granting summary judgment) (no duty arises between manufacturer and consumer); *Waterhouse v. R.J. Reynolds Tobacco Co.*, 270 F. Supp. 2d 678, 685 (D. Md. 2003) (granting motion to dismiss) ("[T]he arms-length relationship between defendant [] manufacturers and [plaintiff], the consumer of their products, does not create a special relationship that gives rise to a duty to speak."); *B. Mahler Interests, L.P.*, 503 S.W.3d at 58 (granting summary judgment) (no duty to disclose in an arms-length transaction).

Here, none of the Plaintiffs purchased or leased their cars directly from Nissan. Adams received her car from her father, who purchased it from a Nissan dealership, not the manufacturer. ECF No. 13 at ¶ 73. Jones also purchased her Nissan from a Nissan dealership. *Id.* at ¶ 81. LeBlanc leased her Nissan from a Honda dealership. *Id.* at ¶ 86. In an arms-length transaction where none of the Plaintiffs dealt directly with the vehicle manufacturer, there is no

---

[9] One Texas Court of Appeal has recognized that a duty of disclosure may arise in other situations "when one voluntarily discloses information, the whole truth must be disclosed; []when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and []when one makes a partial disclosure and conveys a false impression." *Vial v. Gas Sols., Ltd.,* 187 S.W.3d 220, 232 (Tex. App.—Texarkana 2006, no pet.).

duty. Plaintiffs do not allege any other facts supporting the inference that a duty may arise by some other circumstance, such that Nissan made any other voluntary or partial disclosure or representation that would give rise to a duty. Thus, Plaintiffs have failed to plead sufficient facts to support fraudulent concealment tolling.[10] Though plaintiffs argue the limitations issue should be decided on summary judgment, this issue has been decided at both the motion to dismiss and summary judgment stages. In this case, the limitations defects appear patently on the face of the pleadings and therefore can be decided pursuant to the Defendant's Motion to Dismiss.

> c. *Plaintiffs do not sufficiently plead intentional concealment of the defect.*

Plaintiffs must also plead facts that Nissan had a fixed purpose to conceal the defect. "[M]ere failure to disclose a cause of action, or its mere concealment" are not sufficient to meet the third element for tolling to apply. *Vernon*, 2009 WL 2486033, at *5; *see also Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984); *Ultraflo Corp.*, 926 F. Supp. 2d at 950. However, "[w]hen the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986); *see also B. Mahler Interests, L.P. v. DMAC Constr. Inc.*, 503 S.W.3d 43, 58 (Tex. App.—Houston [14th Dist.] 2016, no pet. h.); *Vial*, 187 S.W.3d at 229; *AT&T Corp. v. Rylander*, 2 S.W.3d 546, 557 (Tex. App.—Austin 1999, pet. denied).

In an attempt to allege concealment, Plaintiffs contend that, in the *Sanborn* suit, Nissan redacted or filed numerous documents under seal such that the public cannot read them. ECF No. 13 at ¶¶ 120-121. However, without more, this is insufficient to support a reasonable inference that Nissan had a fixed purpose to conceal the defect. Nissan's actions were done pursuant to a court protective order and thus do not support an inference of intent to conceal.

---

[10] *See* n.9, *supra*.

> ### d.  *Plaintiffs failed to allege diligence in discovering the defect.*

Regarding the issue of whether a plaintiff was reasonably diligent in discovering the defect or fraud or should have discovered the fraud or defect earlier, this is typically a fact question reserved for the jury. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57-58, 61 (Tex. 2015); *Ruebeck v. Hunt*, 176 S.W.2d 167, 170-72 (Tex. 1943). However, Plaintiffs do not plead sufficient facts that they were diligent in discovering the defect. Plaintiff Adams only alleges that she noticed the defect about one and a half years prior to filing suit; in other words, around May 2016. ECF No. 13 at ¶ 75. Plaintiff LeBlanc only mentions that "[w]hen she inquired about the dashboard defect at Honda of Katy, she was told the glare was caused by exposure to sunlight and heat." *Id*. at ¶ 86. However, neither Plaintiff LeBlanc nor Plaintiff Jones alleges when she discovered the defect. At most, Plaintiffs state that

> Plaintiffs and other Class Members did not discover, and did not know of facts that would have caused a reasonable person to discover, that Nissan concealed information within its knowledge from consumers, nor would a reasonable and diligent investigation by a reasonable lay person, after Plaintiffs first noticed the problem, have disclosed that Nissan had information in its possession about the existence and dangerousness of the defect and opted to silently conceal the information.

*Id*. at ¶ 126. At the bare minimum, they each must plead some facts as to when and how they discovered the defect, and their diligence in discovering the defect.[11]

> ### e.  *Plaintiffs failed to sufficiently plead reliance.*

As to the reliance element, Plaintiffs allege that Nissan advertised for the Nissan Altima and advertised that the Class Vehicles were "made to drive, built to last." ECF No. 13 at ¶ 129. Plaintiffs failed to allege that they relied on this advertising before they purchased their vehicles.

---

[11] Furthermore, throughout their complaint, Plaintiffs repeatedly reference the *Sanborn* suit that was filed in 2014. ECF No. 13 at ¶¶ 6-10, 23-24, 27, 51, 71, 93(i), 120-121. With reasonable diligence, Plaintiffs would have discovered this action and discovered sooner that their Nissan vehicle might have a defect. Assuming tolling applies, their claims would have been tolled until the date on which they should have been on notice.

13

*f.   Heightened pleading requirement with regard to fraud.*

Defendant argues the Complaint should be dismissed because Plaintiffs failed to meet the heightened pleading requirement for fraudulent concealment. ECF No. 15 at 13. The Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Court agrees that Plaintiffs were required to plead fraud with the 9(b) required specificity. Since the Court finds Plaintiffs failed to satisfy the less stringent notice pleading requirement of Rule 8, it need not further analyze whether Plaintiff has met a heightened pleading standard. *See* FED. R. CIV. P. 8(a)(2).

## B.  Plaintiffs Fail To State A Claim On Which Relief Can Be Granted.

### 1.   Plaintiffs fail to state a claim for breach of implied warranty of merchantability.

*a. Plaintiffs fail to allege a defect during the implied warranty period.*

Defendant argues Plaintiffs fail to state a claim for breach of implied warranty of merchantability because the alleged defect did not arise during the warranty period ("36 months or 36,000 miles, whichever comes first").[12] ECF No. 15 at 13; Ex. A, ECF No. 15-1; Ex. B, ECF No. 15-2. Plaintiffs argue the disclaimer is not sufficiently conspicuous to be valid. ECF No. 23 at 12-13.

---

[12] Defendant attached a copy of the applicable warranty booklets to its Motion to Dismiss. A court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *see also Salinas v. Ford Motor Company*, No. 7:15-CV-11, 2015 WL 13121265, at *2-4 (S.D. Tex. Sept. 3, 2015) (in a product liability case, considering vehicle warranty attached to Defendant's motion to dismiss); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 816 (S.D. Ohio 2012)  (in a product liability case, considering vehicle warranties attached to defendant's motion to dismiss without converting motion to dismiss to a motion for summary judgment); *Perko v. Ford Motor Co.*, No. 10-514, 2011 WL 1769098, at *2 (N.D. Ohio May 9, 2011) (in a product liability case, considering vehicle warranties attached to defendant's motion to dismiss, but converting motion to a motion for summary judgment because defendant also attached numerous non-warranty exhibits to the motion to dismiss)). Here, Plaintiffs reference both the implied (ECF No. 13 at ¶¶ 101, 102, 105) and express warranties (ECF No. 13 at ¶¶ 11, 93(e)) in their Complaint, and the warranties are central to their claims. The limitation of the implied warranty is central to whether Plaintiffs alleged a defect during the warranty period, such that a breach took place, and the express warranties are central to whether an express contract bars Plaintiffs' equitable claims.

14

Neither case law nor secondary sources clarify the duration of implied warranties under Texas law, though "there is no requirement goods must last forever in order to merchantable." *Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *7 (W.D. Tex. Oct. 31, 2013). Instead, Texas law allows sellers or manufacturers to disclaim or limit implied warranties. TEX. BUS. & COM. CODE § 2.316(b); *Salinas v. Ford Motor Co.*, No. 7:15-CV-11, 2015 WL 13121265, at *4 (S.D. Tex. Sept. 3, 2015); *Deburro*, 2013 WL 5917665, at *6. Federal courts have found plaintiffs failed to state a claim and granted motions to dismiss where the manufacturer validly limited the duration of the implied warranties to the duration of their express warranties, and where Plaintiffs alleged the defect arose outside the warranty period. *Salinas*, 2015 WL 13121265, at *4; *Deburro*, 2013 WL 5917665, at *6.

"[T]o exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous." TEX. BUS. & COM. CODE § 2.316(b). "Whether a term is 'conspicuous' or not is a decision for the court." *Id*. at § 1.201(b)(10). A term is conspicuous when it is

> so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. … Conspicuous terms include the following: (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or offset from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id*. "[T]he test is whether attention can reasonably be expected to be called to it." *Id*. at § 1.201(b)(10), cmt. no. 10. Applying this standard, courts have found that disclaimers in bold or capital letters, setting such disclaimer apart from the surrounding text, were sufficiently conspicuous to make the disclaimer valid. *Am. Eagle Ins. Co. v. United Techs. Corp.*, 51 F.3d 468, 469 (5th Cir. 1995); *Coppock v. Nat'l Seating & Mobility, Inv.*, 121 F. Supp. 3d 661, 668

(W.D. Tex. 2015); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 828-29 (S.D. Tex. 2013).

Nissan's 2008 and 2009 express warranties both contain the limitation of the implied warranty on each page four.[13] ECF Nos. 15-1, 15-2. The heading at the top of page four states in large, capital, and bold letters: "**NEW VEHICLE LIMITED WARRANTY**", in a block that is shaded in a darker color compared to the rest of the page. In the middle of that page is a text box set off from the surrounding text, with the heading in capital, bold, and italicized letters: "*LIMITATION OF WARRANTIES AND OTHER WARRANTY TERMS AND STATE LAW RIGHTS*." This is slightly larger than the text surrounding it. Therein it is further stated in capital letters: "ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY." Attention can reasonably be expected to be called to this limitation, and as a matter of law, it is sufficiently conspicuous to be valid. TEX. BUS. & COM. CODE § 1.201(b)(10), cmt. no. 10.

Plaintiffs have not alleged that the defect manifested during the warranty period. To the contrary, Plaintiffs state "[c]onsumers in Texas and other states are left without recourse as Nissan concealed the defect until the express warranties had expired." ECF No. 13 at ¶ 11; *see also id.* at ¶ 93(e). Thus, there was no implied warranty of merchantability in effect at the time Plaintiffs discovered the defect or brought their claims. "Plaintiff[s] [do] not plead facts supporting a reasonable inference that [their] vehicle mileage was within the time period covered by the written warranties. Accordingly and necessarily, [they] [do] not plead facts supporting a reasonable inference that [their] vehicle[s] [were] covered by the implied warranty of

---

[13] *See* n.12, *supra*.

merchantability at the time of [their] complaint." *Salinas*, 2015 WL 13121265, at *4 (granting motion to dismiss implied warranty claim); *see also Garcia*, 127 F. Supp. 3d at 230-31 (applying Texas law) (granting motion to dismiss plaintiffs' implied warranty claims because they complained of defects after the warranty expired, but denying motion to dismiss as to one Texas plaintiff who complained of defects within the warranty period); *Deburro*, 2013 WL 5917665, at *7 (granting motion to dismiss implied warranty claim because plaintiffs did not complain of defect until after the expiration of the warranty period). Accordingly, Plaintiffs fail to state a claim for breach of implied warranty.

### b.   *Plaintiffs sufficiently allege their vehicles are unfit for transportation.*

Defendant further argues that Plaintiffs' breach of warranty of merchantability claims should be dismissed because Plaintiffs failed to allege their vehicles are unfit for transportation. ECF No. 15 at 14. Under Texas law, to state a claim for breach of implied warranty of merchantability, a plaintiff must plead facts that "the product contained a defect that renders it unfit for its ordinary purpose, the defect existed when it left the manufacturer's possession, and that the defect caused the plaintiff to suffer injury." *Barragan v. General Motors, LLC*, No. 4:14-CV-93-DAE, 2015 WL 5734842, at *8 (W.D. Tex. Sept. 30, 2015). "A defect 'means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.'" *In re Air Bag Prod. Liab. Litig.*, 7 F. Supp. 2d 792, 806 (E.D. La. 1998). "The ordinary purpose of an automobile is to provide transportation." *Id*.

The Court finds Plaintiffs have sufficiently alleged the vehicles are unfit for transportation. Plaintiffs allege that because the defective dashboard reflects off the windshield, drivers "struggle to see" and their view is obstructed. ECF No. 13 at ¶¶ 3, 30, 45, 76, 87.

Plaintiffs claim the "Class Vehicles are unfit for transportation because they pose a significant safety hazard" and "unreasonably dangerous to operate." *Id.* at ¶¶ 3, 45, 77, 79, 83-84, 88. They allege similar defects that impair a driver's vision, including from defective dashboards, in other vehicles have resulted in recalls. *Id.* at ¶¶ 55-61; s*ee Barragan*, 2015 WL 5734842, at *8 (denying motion to dismiss implied warranty claim because plaintiff sufficiently alleged defects which violated implied warranty that vehicle was among other things, safe for transportation); *Garcia*, 127 F. Supp. 3d at 232 (denying motion to dismiss implied warranty claim as to one Texas plaintiff because he alleged issues with vehicle electrical components that make driving unsafe).

### 2. Plaintiffs fail to state a claim for money had and received and unjust enrichment.

#### a. *Plaintiffs fail to state a claim for equitable relief because the alleged defect is addressed by a contract—the vehicle express warranty.*

Defendant claims Plaintiffs fail to state a claim for money had and received and unjust enrichment because they have a legal remedy available to them—namely under the express vehicle warranty. ECF No. 15 at 17. Plaintiffs respond that the Federal Rules of Civil Procedure permits them to plead alternative and potentially inconsistent theories, and in the event the Court were to find the dashboard defect is not covered by the warranty, Plaintiffs must be able to bring alternative, equitable claims. ECF No. 23 at 17.

Plaintiffs can plead alternative theories, but "[u]nder Texas law, an unjust enrichment claims fails upon a showing that an express contract exists." *In re General Motors Corp.*, 385 F. Supp. 2d 1172, 1176 (W.D. Okla. 2005). "Unjust enrichment is a quasi-contractual claim that is based on the absence of an express agreement." *Anderson v. CitiMortgage, Inc.*, No. 4:10-CV-398, 2011 WL 1113494, at *6 (E.D. Tex. Mar. 24, 2011). "[W]hether a plaintiff has a

meritorious claim for breach of contract does not govern whether that remedy precludes a claim for unjust enrichment; rather, the mere existence of [a] potential contract claim bars the unjust enrichment remedy." *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 454. In several product liability cases, courts have dismissed plaintiffs' equitable claims on the basis that vehicle warranties preclude recovery on an equitable basis. *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 454 (applying Texas law); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 879 (S.D. Ohio 2012) (same); *In re General Motors Corp.*, 385 F. Supp. 2d at 1176 (same).

In the case of *In re Porsche Cars N. Am., Inc.*, the court granted the motion to dismiss, in part, as to the Texas plaintiffs' claim for unjust enrichment. 880 F. Supp. 2d at 878. Plaintiffs alleged their Cayenne vehicle was equipped with plastic coolant tubes that "cracked, leaked, or otherwise failed and … caused damage to other parts of the engine." *Id*. at 812-13. The court stated: "[i]f a valid contract exists and governs the subject matter at issue, there can be no recovery upon a contract implied by law." *Id*. at 878. The Texas plaintiffs had alleged that the defendant should reimburse them for their cost of repairing the defect which "manifested outside of the Warranty Period." *Id*. at 879. The court found plaintiffs

> fail[ed] to state a claim for unjust enrichment because the 'Texas Plaintiffs' vehicles are subject to the terms of the Warranties. The Warranties define [defendant's] obligation to reimburse consumers for the cost of repairing and replacing parts that are defective in material. … Allowing Texas Plaintiffs to recover the damages that they seek from [defendant] under a theory of unjust enrichment would improperly expand the duration and scope of these Warranties.

*Id*. at 879.

Here, Plaintiffs' equitable claims for money had and received and unjust enrichment are likewise barred because the alleged defect is already covered by Nissan's express vehicle

warranties.[14] On page four of each of Nissan's 2008 and 2009 warranties, there is a text box entitled: "**FOR HOW LONG AND WHAT IS COVERED**." The warranty states "[t]he basic coverage period is 36 months or 36,000 miles, whichever comes first. This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle…." ECF Nos. 15-1, 15-2. The warranties are clear. Equitable relief is not available where an express warranty applies, and it does here.

> b.  *Plaintiffs fail to allege sufficient facts supporting a reasonable inference that Nissan received money that belongs to them.*

In addition, Plaintiffs fail to state a claim for money had and received because they fail to allege that Nissan received or is holding money that belongs to them. None of the Plaintiffs purchased or leased their cars directly from Nissan. ECF No. 13 at ¶¶ 73, 81, 86. *Everett v. TK-Taito, L.L.C.* is instructive. In this case, the court granted a motion to dismiss plaintiffs' claims for money had and received because plaintiffs offered

> no explanation of how Appellees purportedly possess money that belongs to the Everetts; they do not plead that they purchased their vehicles from any of the Appellees and they do not allege that Appellees overcharged them for their vehicles.

*Everett v. TK-Taito, L.L.C.,* 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.). Likewise, Plaintiffs fail to sufficiently allege what money went to Nissan that belongs to them. During oral argument, Plaintiffs' counsel conceded that Plaintiffs Adams and LeBlanc have no cognizable claim for money had and received. Apr. 20, 2018 Oral Argument at 11:48.

In addition, Plaintiffs allege that they suffered "economic loss, in the form of lost sales or lease payments and/or diminution in value, of their Class Vehicles" and cost of repair or replacement. ECF No. 13 at p. 23 ¶ 104, p. 28. However, "cost-of-replacement damages do not

---

[14] *See* n.12, *supra*.

constitute injuries that are recoverable in an equitable claim for money had and received." *Everett*, 178 S.W.3d at 860. On this basis too, Plaintiffs fail to state a claim.

### C. Plaintiffs' Claims For Declaratory And Injunctive Relief Must Be Dismissed Because There Is No Justiciable Claim Or Controversy.

Defendant correctly contends that Plaintiffs' claims for declaratory and injunctive relief are derivative of their other claims, and if the other claims are dismissed, so too must the claims for declaratory and injunctive relief be dismissed. "Both Texas and federal law require the existence of a justiciable case or controversy in order to grant declaratory relief. … In a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 Fed. App'x. 398, 400 (5th Cir. 2011). In *Val-Com Acquisitions Trust*, where the plaintiffs' underlying claims had been dismissed, "there was no underlying claim for the court to adjudicate and the court could not declare a violation…." *Id.* at 401; *see also Vestal v. Federal Nat'l Mortgage Assoc.*, No. H-16-3628, 2017 WL 4217165, at *3 (S.D. Tex. Sept. 20, 2017) (where plaintiff's underlying "claims will be dismissed, his request for declaratory relief has no merit."). Plaintiffs do not contest that if their other claims are dismissed, their claims for declaratory relief would be subject to dismissal as well. ECF No. 23 at 2 n.1.

The same principle applies to Plaintiffs' claims for injunctive relief. "[I]njunctive relief without a cause of action supporting entry of a judgment must be dismissed." *Payrovi v. Wells Fargo Bank, NA*, No. 4:17-CV-2480, 2017 WL 4950066, at *3 (S.D. Tex. Oct. 31, 2017) (citing *Barcenas v. Fed. Home Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 386250, at *9 (S.D. Tex. Jan. 24, 2013)).

In addition, Plaintiffs fail to state a claim for injunctive relief separate from declaratory relief. The only reference to injunctive relief in the Complaint is in the heading of the third cause

of action: "Declaratory Judgment and Injunctive Relief Under 28 U.S.C. § 2201." ECF No. 13 at p. 24-25. The statute cited provides only for declaratory relief. 28 U.S.C. § 2201. Plaintiffs also do not request any injunctive relief per se—they only request "[a] **judicial declaration**… in order that Plaintiffs and the other Class members may ascertain their rights and duties with respect to Nissan's refusal to date to repair their defective dashboards and notify them of the defect and safety hazard." ECF No. 13 at ¶ 114 (emphasis added). Nor do Plaintiffs request any injunction in their prayer for relief. *Id*. at p. 28.

### D.  Amendment Would Be Futile.

Generally, if a motion to dismiss is granted, a plaintiff should be granted leave to amend if the pleading defect can be cured. However, here, the pleading defects cannot be cured. "The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)); *see also Barbour v. City of Forney*, No. 3:15-CV-90-B, 2015 WL 4094005, at *3 (N.D. Tex. June 17, 2015) ("The Court 'may consider a variety of factors' when deciding whether to grant leave to amend, 'including … repeated failures to cure deficiencies by amendments previously allowed, … and futility of the amendment.'"), *report and recommendation adopted*, No. 3:15-CV-90-B, 2015 WL 4113571 (N.D. Tex. July 7, 2015). Nissan's lack of duty to the consumer is fatal to Plaintiffs' claim that fraudulent concealment tolled their action. Plaintiffs have already amended their Complaint once in response to Defendant's first Motion to Dismiss. Thus, further amendment would be futile.

## IV.
## CONCLUSION

The Court recommends that Defendant Nissan's Motion to Dismiss should be **GRANTED**. The case should be **DISMISSED WITH PREJUDICE**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on May 4, 2018.

_____
Dena Hanovice Palermo
United States Magistrate Judge